**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**

ROBERT TAYLOR and REBECCA LASTINGER, )
as the Surviving Parents and Administrators )
of the Estate of ETHAN TAYLOR, Deceased; )
KAYLA HERRIN, as mother of ETHAN ) Civil Action:_____
TAYLOR'S surviving minor child, M.K.M; ) File No.
KYLA THORNTON, as mother of ETHAN )
TAYLOR'S surviving minor children, D.J.T., and ) **JURY TRIAL DEMANDED**
E.H.T. )
 )
  Plaintiffs, )
-vs- )
 )
PIERCE COUNTY, GEORGIA; Johnny Mizell, in his )
Individual Capacity; Chanda Shubert, LPN, in her )
Individual Capacity; Sheriff John Ramsey Bennett, )
Individually and in his Official Capacity as Sheriff of )
Pierce County, Georgia; Dr. Clay Lee, in his )
Individual Capacity; Dr. Jerry Mullis, in his Individual )
Capacity; Faith Family Practice, LLC; Bradley Page, )
PA-C, in his Individual Capacity; Clifford Mosely, in )
his Individual Capacity; Germiska McGauley-Miles, )
in her Individual Capacity )
 )
 )
  Defendants. )
 )

## COMPLAINT FOR DAMAGES

COMES NOW, ROBERT (ROB) TAYLOR and REBECCA (BECKY) LASTINGER
(hereinafter "Plaintiffs"), as the Surviving Parents and Administrators of the Estate of ETHAN
TAYLOR, Deceased; KAYLA HERRIN, as the mother of ETHAN TAYLOR'S surviving minor
child, M.K.M. (hereinafter "Plaintiffs"); KYLA THORNTON, as the mother of ETHAN
TAYLOR'S surviving minor children, D.J.T. and E.H.T.  (hereinafter "Plaintiffs"), and files this

Complaint against JOHNNY MIZELL, (hereinafter Mizell or Defendant), in his individual

capacity, Chanda Shubert, LPN, in her Individual Capacity; Sheriff John Ramsey Bennett,

Individually and in his Official Capacity as Sheriff of Pierce County, Georgia; Pierce County,

Georgia; Dr. Clay Lee, in his Individual Capacity; Dr. Jerry Mullis, in his Individual Capacity;

Faith Family Practice, LLC; Bradley Page, PA-C, in his Individual Capacity; Clifford Mosely, in

his Individual Capacity; and Germiska McGauley-Miles, in her Individual

Capacity alleging as follows:

<u>**INTRODUCTION**</u>

1.    This is a civil lawsuit brought by Plaintiffs to rectify and address the wrongful death of

Ethan Taylor (hereinafter "Taylor"), which occurred while he was incarcerated at the

Pierce County Jail.

2.    Specifically, jailer, Johnny Mizell acted negligently by failing to adhere to established jail

policy, which mandated in-person surveillance at fifteen-minute intervals for inmates

identified as suicidal and/or recovering from intoxicants.

<u>**JURISDICTION, PARTIES, AND VENUE**</u>

3.    Plaintiffs adopt and incorporate paragraphs 1 through 2 as if set forth fully herein.

4.    This action is brought pursuant to Ga. Const. Art. I, § II, Para. IX. By bringing this action,

Plaintiffs subject themselves to the jurisdiction and venue of this honorable Court.

5.    Plaintiff Rebecca Lastinger, as surviving mother and temporary administrator of Ethan

Taylor's estate, and Rob Taylor, as surviving father and temporary administrator of Ethan

Taylor's Estate, are residents of Pierce County, Georgia.

6.  As the surviving parents and temporary administrators of Ethan Taylor's estate, Plaintiffs Becky Lastinger and Rob Taylor are the proper parties to pursue claims on behalf of the estate, including but not limited to survival claims.

7.  Plaintiff  Kayla Herrin, as the mother of Ethan Taylor's surviving minor child, M.K.M., is a resident of Brantley County, Georgia.

8.  Plaintiff Kayla Herrin, as the mother of Ethan Taylor's surviving minor child, M.K.M., is the proper party to pursue all claims for the wrongful death of Ethan Taylor.

9.  Plaintiff  Kyla Thornton, as the mother of Ethan Taylor's surviving minor children, D.J.T. and E.H.T., is a resident of Pierce County, Georgia.

10.  Plaintiff Kyla Thornton, as the mother of Ethan Taylor's surviving minor children, D.J.T. and E.H.T., is the proper party to pursue all claims for the wrongful death of Ethan Taylor.

11.  At all relevant times hereto, Johnny Mizell (hereinafter "Mizell" was an employee of the Pierce County Sheriff's Office and worked as a detention officer at the Pierce County Jail. Defendant Mizell was on duty as a detention officer in the Pierce County Jail on the days immediately preceding and on the night of Taylor's death, December 30, 2023. Jurisdiction and venue are proper with this Court as to Defendant Mizell.

12.  At all times relevant hereto, Defendant Chanda Shubert, LPN (hereinafter "Shubert"), was an employee of Faith Family Practice, LLC. Defendant Shubert is a resident Ware County, Georgia and can be served with process at her residence located at 168 Stetson Drive, Waycross, Georgia 31501.

13.  Defendant John Ramsey Bennett (hereinafter "Bennett") is, and at all times relevant

hereto was, the Sheriff of Pierce County, Georgia and is a resident of Pierce County, Georgia. At all times relevant hereto, Defendant Bennett was responsible for the conduct of the employees and agents of Pierce County Sheriff's Office and Pierce County Jail; for establishing customs, policies, and procedures to regulate the conduct of agents and employees of the Pierce County Sheriff's Office and the Pierce County Jail; and for ensuring that employees and agents of the Pierce County Sheriff's Office and Pierce County Jail obeyed the laws of the State of Georgia and of the United States. Defendant Bennet can be served with process at his residence located at 4168 Alvin Walker Road, Blackshear, Georgia 31516.

14.    Defendant Pierce County is a local political subdivision of the State of Georgia and is a body corporate, capable of suing and being sued. Defendant Pierce County's affairs are committed to a board of county commissioners consisting of five (5) members. Defendant Pierce County, a local government, may be served with process by serving Neal Bennett, Chairman of the aforesaid Pierce County Board of Commissioners. With respect to this Defendant, Plaintiff has satisfied the requirements of O.C.G.A. § 36-11-1 by presenting their claims in writing to this Defendant within twelve (12) months of the accrual of the claims. A copy of Plaintiff's said O.C.G.A. § 36-11-1 ante litem notice is attached hereto as Exhibit **"A"**

15.    At all times relevant hereto, Defendant Dr. Clay Lee (hereinafter "Lee") was an employee of Faith Family Practice, LLC. Jurisdiction and venue are proper with this Court as to Defendant Lee.

16.    At all times relevant hereto, Defendant Dr. Jerry Mullis (hereinafter "Mullis) was an

-4-

employee of Faith Family Practice, LLC. Jurisdiction and venue are proper with this Court as to Defendant Mullis.

17.    At all times relevant hereto, Defendant Faith Family Practice is a domestic limited liability company with its primary business located at 2100 Riverside Ave., Waycross, Ware County, Georgia 31501, and can be served with process by serving its registered agent, Mary Elizabeth Page, 11608 Central Avenue, Hoboken, GA 31542.

18.    At all times relevant hereto, Defendant Bradley Page, PA-C (hereinafter "Page"), was an employee of Faith Family Practice, LLC. Defendant Page is a resident of Brantley County, Georgia and can be served with process at his residence located at 11608 Central Avenue, Hoboken, Georgia, 31542.

19.    At all relevant times hereto, Defendant Clifford Mosely (hereinafter "Mosely") was an employee of the Pierce County Sheriff's Office and worked as a detention officer at the Pierce County Jail. Defendant Mosely was on duty as a detention officer in the Pierce County Jail on the days immediately preceding and on the night of Taylor's death, December 30, 2023. Jurisdiction and venue are proper with this Court as to Defendant Mosely.

20.    At all times relevant hereto, Defendant Germiska McGauley-Miles (hereinafter "Miles") was responsible for answering the calls of Plaintiffs and directing those calls to the proper personnel at the Pierce County Jail. Jurisdiction and venue are proper with this Court as to Defendant Miles.

21.    Venue is appropriate as all of the events giving rise to this suit occurred in Pierce County, Georgia.

## FACTUAL ALLEGATIONS

### A. Wednesday, December 27, 2023; Taylor is Incarcerated at the Pierce County Jail

22.    Plaintiffs adopt and incorporate paragraphs 1 through 13 as if set forth fully herein.

23.    On December 27, 2023, at 9:26 P.M., Taylor was arrested near the Budweiser

Distribution Center.

24.    He was subsequently transported to and booked into the Pierce County Jail, located at 300

Pierce Industrial Blvd, Blackshear, GA 31516.

### B. Thursday, December 28, 2023; Beginning of Taylor's Withdrawals

25.    On the evening of December 28th, 2023, Taylor began to experience fentanyl withdrawals.

26.    At 9:13 A.M., Taylor was seen by a Nurse (LPN) from Faith Family Practice, LLC.

27.    No medications were prescribed to alleviate Taylor's withdrawal symptoms.

### C. Friday, December 29, 2023; Taylor begins to Experience Significant Withdrawals

28.    On the morning of December 29, 2023, Taylor's withdrawals continued to worsen; this

included profuse vomiting and defecation.

29.    Defendant Shubert came and examined Taylor just before noon and determined he was a

10 out of 48 on the Clinical Opiate Withdrawal Scale.

30.    Any score over an 8 is given prescription medication and electrolyte replenishment

throughout the day.

31.    Shubert prescribed Taylor Phenergan, Vistaril, and Depakote, with the Vistaril and

Depakote to be taken that day and the following day. Defendant Page approved Defendant

Shubert's recommended prescriptions as he was the Physician Assistant on call and was

responsible for supervising the nurses providing care to inmates at the jail. Defendant Page never went to the jail to evaluate Taylor. Defendants Lee and Mullis were responsible for overseeing and supervising the conduct and actions of both Defendant Page and Defendant Shubert, and Defendants Mullis and Lee never went to the jail to evaluate Taylor.

    a.    Phenergan: Phenergan is used to prevent and control mainly nausea and vomiting.

    b.    Vistaril: Vistaril is used to help control anxiety and tension caused by nervous and emotional conditions.

    c.    Depakote: Depakote is an anticonvulsant and is used to treat certain types of seizures.

32. After meeting with Shubert, Taylor continued to have significant withdrawals. During this time, Taylor:

    a.    continued to vomit;

    b.    had uncontrollable defecation;

    c.    spoke with his dad on the phone and said, "Daddy, I feel like I'm dying"; and

    d.    requested further medical assistance from the jailers.

33. Additionally, inmate Wesley Hickox, Taylor's cellmate, told jailers that Taylor needed urgent medical attention.

34. Taylor's withdrawals became severe enough that he was unable to stand.

35. Around 10:00 P.M., his medical condition worsened.

36. Upon learning of his worsening condition, jailers moved Taylor to a rubber isolation room in the "K" Ward.

37. Because Taylor could not stand, four jailers had to pick him up and carry him to the padded cell.

38. Seeing this, the inmates around Taylor pleaded with the jailers to get Taylor help, but the jailers refused.

39. Taylor's family, concerned for his safety, reached out to the jail to speak with Taylor on the phone.

40. The jail refused, stating that he was in no condition to speak.

### D. Saturday, December 30, 2023; The Death of Ethan Taylor

41. On the evening of December 30, 2023, Defendant Mizell was assigned to watch over and take care of Taylor.

42. Around 5:00 P.M., Gerome Eason, an inmate trustee at the Pierce County Jail, accompanied Mizell to Taylor's cell; the purpose of this visit was to distribute meals to the inmates in the "K" ward.

43. At that time, Eason noticed that Taylor was given his meal with juice, not Gatorade. *Id.*

44. He also noticed that Taylor was clearly in very bad shape; in Taylor's cell, Eason observed:

   a. 1/4" - ½" of thrown-up stomach bile covering the floor

   b. Taylor's hair was badly matted with vomit

   c. Taylor's eyes appeared to have a white, cloudy shield built over them

   d. When asked if he was okay, Taylor could not respond

   e. Taylor's inability to stand

*Id.*

45. Mizell was with Eason and witnessed Taylor's declining health and decrepit physical state. *Id.*

46. At or about this time, EMT personnel were present in the "K" Ward tending to another inmate who was sick. *Id.*

-8-

47.    Mizell knew of the presence of EMTs in the K ward but made no effort to get the medical personnel to see and assess Ethan Taylor. *Id.*

48.    According to Eason, "Mr. Mizell did not seem to be the least bit concerned about Ethan Taylor's condition when we delivered his last meal." *Id.*

49.    At 6:29 P.M., the family called the jail to check on Taylor and his condition.

50.    The family of Ethan Taylor spoke with Defendant Mosely and was told he was on medical watch, that he was doing fine, and Mosely refused to let anyone speak with Taylor.

51.    This phone call was the last time any of Taylor's family communicated with the jail before his death[1].

52.    Defendant Miles was the individual responsible at the jail on December 30, 2023 for answering the phone

53.    Miles failed to be receptive of Taylor's family's complaints and hung up the phone on them multiple times.

54.    Miles eventually stopped answering any of the calls from Taylor's family.

55.    At 7:12 P.M.,  Mizell took Taylor his prescribed medications and a drink.

56.    This was the last time Taylor was checked on by Mizell or anyone else at the jail.

57.    At or around 11:17 P.M., Taylor's lifeless body was found on the floor of his cell.

58.    In Sgt. Hunter Giffen's supplemental police report of the incident, he wrote, "When I arrived at [Taylor's] cell, I observed  I/M Taylor laying on the floor of the cell. I observed both of his arms where [sic] slightly elevated from the ground with his hands curled

---

[1] This conversation marked the 5th time Taylor's family alerted the jail  that Taylor was severely sick and was in need of help.

inwards. I was about to begin CPR when I determined that I/M Taylor was cold to the touch and rigor mortis had set in."

59.     It takes approximately two hours for rigor mortis to begin to set in.

60.     Under Pierce County Jail Policy No. 3.8, "inmates who are suicidal shall receive in-person surveillance of at least every 15 minuets."

61.     Under Pierce County Jail Policy No. 3.8, "inmates who are recovering from intoxicants shall receive in-person surveillance of at least every 15 minutes." *Id.*

62.     Under Pierce County Jail Policy No. 3.8, inmates who are confined to padded/rubbered rooms/cells are to receive in-person surveillance at staggered intervals of at least every 30 minutes. *Id.*

63.     Under Pierce County Jail Policy No. 3.8, "direct in-person surveillance is to be made of every inmate in the general population at staggered intervals at least every 60 minutes." *Id.*

64.     These policies are nondiscretionary, and mandate actions that **<u>shall</u>** be taken by a jailer. *See Id.*

65.     Mizell, along with other Pierce County Jail employees, failed to check on Taylor for over a four-hour period; *i.e.*, on sixteen separate occasions, Mizell was required to check on Taylor but did not.

66.     Mizell's negligence in following clear and established jail policies resulted in the tragic and untimely death of Ethan Taylor.

67.

## COUNT I:

### NEGLIGENCE

68.     Plaintiffs adopt and incorporate paragraphs 1 through 66 as if set fourth forth fully herein.

69.     Plaintiffs bring this count pursuant to Ga. Const. Art. I, § II, Para. IX. for Mizell's negligence in not abiding by clear and established jail policy.

70.     This policy has been implemented and approved by the Pierce County Sheriff's Office since January 1, 2013. *Id*.

71.     Due to Taylor's substantial withdrawals and its effects (e.g. constant vomiting, uncontrollable defecation, inability to stand, suicidal contemplation, etc.), he was placed in a rubber room under suicide and drug withdrawal surveillance.

72.     Because of this, jail policy required and established a duty that Mizell check on Taylor at a minimum, every 15 minutes, and Defendant Mizell also had a duty to act a reasonably prudent person in checking on and assessing the condition of Ethan Taylor. *Id.*

73.     Mizell failed to check on Taylor for at least two hours. This is evidenced by Taylor's body being in rigor mortis at the time he was found.

74.     Mizell, in his capacity as a jailer with custody and control over Taylor, was under a legal duty to protect him from harm; *i.e.*, jail policy No. 3.8 mandating in-person surveillance every 15 min for inmates who are suicidal and/or recovering from intoxicants.

75.     Mizell breached this duty by failing to abide by the jail policy and by failing to act as a reasonably prudent person in checking on and assessing the condition of Taylor.

76.     It was clearly foreseeable that if Taylor was left unsupervised, he would experience

detrimental harm[2]. As such, Defendant Mizell's conduct was a factual and a proximate cause of Ethan Taylor's death.

77.    Mizell's failure to abide by the clear jail policy was the direct cause of Taylor's death.

78.    AS a result of Defendant Mizell's failures and breaches of his duties owed to Ethan Taylor, Taylor suffered severe discomfort; injury; pain; and anguish, both physical and emotional, and death as described hereinabove

79.    At all times relevant hereto, Defendant Mizell was acting within the scope of his employment and therefore, Defendant Mizell's negligence is imputed to Defendant Pierce County and Defendant Bennett, in his official capacity as Sheriff of Pierce County.

## COUNT II:

### NEGLIGENCE OF DEFENDANT CLIFFORD MOSELY

80.    Plaintiffs realleges and incorporates herein by reference all above-referenced paragraphs as if fully set forth herein.

81.    Defendant Mosely, as a correctional officer tasked with the responsibility of caring for Ethan Taylor, owed a duty to Taylor to protect him from harm.

82.    Defendant Mosely breached this duty by providing false reports of his health to Taylor's family and by refusing to allow Taylor's family to speak with him and verify his physical condition.

83.    Had Taylor's family known his true condition, they would have taken immediate action to preserve his life, including but not limited to contacting emergency services.

84.    As such, it was reasonably foreseeable that Mosely's actions resulted in the death of

---

[2] Even the inmates surrounding Taylor recognized his deteriorating condition and implored the jail staff, on his behalf, to secure immediate medical aid.

Taylor as the failure to allow his family to speak with him proximately resulted in his death.

85.    As a result of Mizell's failures and breaches of his duties owed to Taylor, Taylor suffered severe discomfort; injury; pain; and anguish, both physical and emotional, and death as described hereinabove.

86.    At all times relevant hereto, Mosely was acting within the scope of his employment and therefore Mosely's negligence is imputed to Defendant Pierce County and Defendant Bennett, in his official capacity as Sheriff of Pierce County.

## COUNT III:

### NEGLIGENCE OF DEFENDANT GERMISKA MCGAULEY-MILES

87.    Plaintiffs realleges and incorporates herein by reference all above-referenced paragraphs as if fully set forth herein.

88.    Defendant Miles, as the person responsible for communicating with Taylor's family and for delivering the concerns of Taylor's family to the proper personnel, owed a duty to Taylor to protect him from harm.

89.    Defendant Miles breached this duty by, including but not limited to:

-    failing to inform personnel at the Pierce County Jail of the concerns that Ethan Taylor's family had concerning his condition; and

-    failing to answer the calls from Ethan Taylor's family.

90.    As such, it was reasonably foreseeable that Defendant Miles's actions resulted in the death of Ethan Taylor as the failure to allow his Family to communicate their concerns proximately resulted in his death.

91.    As a result of Defendant Miles's failures and breaches of her duties owed to Taylor,

Taylor suffered severe discomfort; injury; pain; and anguish, both physical and emotional,

and death as described hereinabove.

92.    At all times relevant hereto, Defendant Miles was acting within the scope of her

employment and therefore, Defendant Miles's negligence is imputed to Defendant Pierce

County and Defendant Bennett, in his official capacity as Sheriff of Pierce County.

## COUNT IV:

### LIABILITY OF PIERCE COUNTY, GEORGIA; and JOHN RAMSEY BENNETT, IN HIS OFFICIAL CAPACITY AS SHERIFF OF PIERCE COUNTY, GEORGIA

92.    Plaintiffs realleges and incorporates herein by reference all above-referenced paragraphs

as if fully set forth herein.

93.    Pursuant to O.C.G.A. § 42-5-2, Defendant Pierce County, Georgia is responsible for

providing adequate medical care to inmates housed in the Pierce County Jail.

94.    Defendant Ramsey Bennett, in his official capacity as Sheriff of Pierce County, Georgia,

pursuant to state law, is responsible for the conditions in the Pierce County Jail and for

ensuring that adequate medical care is provided to inmates housed in the Pierce County

Jail.

95.    Defendants Pierce County and Bennett, in his Official capacity as Sheriff of Pierce

County, breached the duty to provide adequate medical care by failing to properly train,

supervise, or hire individuals qualified to provide proper care to the inmates of the Pierce

County Jail, including Taylor, and by failing to ensure proper policies and procedures are

in place to ensure inmates, including Taylor, are provided adequate medical care.

96.    Defendants Pierce County and Ramsey Bennett, in his official capacity as Sheriff of

Pierce County, breached the duty to provide adequate medical care by failing to ensure that medical professionals retained to provide care to the inmates at the Pierce County Jail, including Taylor, were qualified to provide proper care.

97. The breach of the duty to provide adequate medical care by Defendants Pierce County and Bennett, in his Official Capacity as Sheriff of Pierce County, directly and proximately caused Taylor to suffer severe discomfort; injury; pain; and anguish, both physical and emotional, and death as described hereinabove.

**COUNT V:**

**42 U.S.C. § 1983**
**LIABILITY FOR UNCONSTITUTIONAL PROTOCOL, POLICIES, PRACTICE, CUSTOM, AND USAGE AND/OR PROCEDURES WHICH DEPRIVED TAYLOR OF HIS CONSTITUTIONALLY PROTECTED RIGHT TO ADEQUATE MEDICAL CARE**

**(PIERCE COUNTY, GEORGIA; and JOHN RAMSEY BENNETT, in his Official Capacity as Sheriff of Pierce County)**

98. Plaintiffs re-alleges and incorporates by reference all above-referenced paragraphs as if fully set forth herein.

99. Defendants Pierce County and Bennett, in his Official Capacity as Sheriff of Pierce County, are each responsible, as set forth hereinabove, for providing adequate medical care to inmates housed at the Pierce County Jail, including Taylor.

100. Defendants Pierce County and Bennett, in his official capacity as Sheriff of Pierce County, Georgia, each while acting under color of state law, employed protocol; policies; practice; custom; and usage and/or procedures which deprived Taylor of his constitutionally protected Right to be Free from Cruel and Unusual Punishment, as said Right is protected by the Eighth Amendment and by the Fourteenth Amendment Rights to

Due Process and Equal Protection of the Law.

101.    The protocol; policies; practice; custom; usage and/or procedures of Defendants Pierce County and Bennett, in his Official Capacity as Sheriff of Pierce County, Georgia, constituted deliberate indifference to the serious medicals needs and constitutionally protected rights of Taylor, and directly and proximately resulted in the complete failure of the staff at the Pierce County Jail to obtain appropriate medical care for Taylor and the violation of his constitutionally protected rights. These protocol; policies; practices; customs; usages and/or procedures include, but are not limited to:

a.    failing to have correct medical and/or nursing protocols in place which adequately address the serious medical needs of inmates going through withdrawal from substances;

b.    failing to train individuals providing medical attention and/or care at the Pierce County Jail to recognize the need for medical care in life threatening situations including the onset of substance withdrawals;

c.    failing to train individuals monitoring inmates known or reasonably likely to have the potential for suffering from drug and/or alcohol withdrawal to recognize the need for medical care;

d.    enacting customs or procedures resulting in an unwarranted delay in inmates' access to appropriately qualified medical personnel; and

e.    a custom or practice of failing to adequately inquire into the facts necessary to make a professional judgment as to the medical needs of someone in the custody of the jail.

102.    The execution of the foregoing protocol; policies; practices; customs; usages and/or procedures regarding the provision and monitoring of medical care to inmates housed in the Pierce County Jail was the moving force behind the deprivation of Taylor's constitutionally protected Right to be Free from Cruel and Unusual Punishment, and further, the failure to execute the foregoing protocol; policies; practices; customs; usage and/or procedures directly and proximately caused Ethan Taylor to suffer severe discomfort; injury; pain; and anguish, both physical and emotional, and death

## COUNT VI:

### 42 U.S.C. § 1983
### INDIVIDUAL CAPACITY LIABILITY FOR FAILURE TO TRAIN AND/OR PROPERLY SUPERVISE STAFF AT PIERCE COUNTY JAIL

### (JOHN RAMSEY BENNETT, Individually)

103.    Plaintiffs re-alleges and incorporates herein by reference all above-numbered paragraphs.

104.    Defendant Bennett, individually, as the Sheriff of Pierce County, is responsible for the proper training and supervision of individuals staffing the Pierce County Jail, and monitoring the inmates housed therein.

105.    Defendant Bennett, individually, exhibited a deliberate indifference to Taylor's serious medical needs and constitutionally protected Right to be Free from Cruel and Unusual Punishment and Right to Adequate medical care inasmuch as they failed to properly train and supervise subordinates in the care of individuals experiencing withdrawal from drug and/or alcohol. The significant risk of substantial harm to inmates experiencing such withdrawal, including Taylor, was known to each of the aforesaid Defendants, yet each failed to take adequate measures to ensure that jail personnel were adequately trained and

supervised to appreciate and to address this significant risk of substantial harm.

106.    As a direct and proximate result of the aforesaid Defendants' failures to adequately train and supervise jail personnel as set forth hereinabove, Taylor suffered severe discomfort; injury; pain; and anguish, both physical and emotional, and death.

## COUNT VII:

### 42 U.S.C. § 1983
### INDIVIDUAL LIABILITY OF CHANDA SHUBERT, LPN, BRADLEY PAGE, PA-C, DR. JERRY MULLIS, AND DR. CLAY LEE FOR FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

107.    Plaintiffs re-alleges and incorporates herein by reference all above-numbered paragraphs as if fully set forth herein.

108.    Defendant Shubert was a Licensed Practical Nurse and provided medical care at Pierce County Jail. Defendant Page is a Physician Assistant who provided medical care at Pierce County Jail. Dr. Lee and Dr. Mullis are physicians who were responsible for providing medical care at Pierce County Jail and for overseeing and supervising the actions of Defendants Shubert and Page

109.    Defendants Shubert, Page, Lee, and Mullis were responsible during their work shifts for properly observing; monitoring; assessing; treating and addressing Taylor's medical condition.

110.    Defendants Shubert, Page, Lee, and Mullis exhibited a conscious and deliberate indifference to Taylor's serious medical needs and constitutionally protected Right to be Free from Cruel and Unusual Punishment and Right to Adequate Medical care inasmuch as Defendants failed to properly intervene and treat Taylor's condition while he was incarcerated in the Pierce County jail; failed to properly monitor, observe, and assess

-18-

Taylor's medical condition and to obtain appropriate medical assistance for him; and

failed to investigate, to make reports to appropriate medical personnel, and to offer any

type of meaningful assistance to Taylor, or to ease his visible pain and suffering, despite

the clear, open, and obvious signs that he was experiencing dangerous withdrawal

symptoms while in custody.

111.    As a direct and proximate result of the aforesaid Defendants' failure to provide adequate

medical care as set forth hereinabove, Taylor suffered severe discomfort; injury; pain; and

anguish, both physical and emotional, and death.

### COUNT VIII:

**42 U.S.C. § 1983**
**INDIVIDUAL LIABILITY OF JOHNNY MIZELL AND CLIFFORD MOSELY**
**FOR FAILURE TO PROVIDE ADEQUATE MEDICAL CARE**

112.    Plaintiffs re-alleges and incorporates herein by reference all above-numbered paragraphs

as if fully set forth herein.

113.    Defendants Mizell and Mosely were detention officers employed at the Pierce County

Jail.

114.    Mizell and Mosely had a duty; obligation; and responsibility, during their work shift, to

personally and properly observe; monitor; assess; care for; and address Taylor's medical

condition during his incarceration.

115.    Mizell and Mosely exhibited a conscious and deliberate indifference to Taylor's serious

medical needs and constitutionally protected Right to be Free from Cruel and Unusual

Punishment and Right to Adequate Medical care inasmuch as Defendants Mizell and

Mosely failed to properly monitor, observe, and assess Taylor's medical condition and to

-19-

obtain appropriate medical assistance for him; deliberately and improperly placed Taylor into confinement in the "safety room" under inhumane conditions; and failed to investigate, to make reports to appropriate medical personnel, and to offer any type of meaningful assistance to Taylor, or to ease his visible pain and suffering, despite the clear, open, and obvious signs that he was experiencing dangerous withdrawal symptoms while in custody.

116.    As a direct and proximate result of the aforesaid Defendants' failure to provide adequate medical care as set forth hereinabove, Taylor suffered discomfort; injury; pain; and anguish, both physical and emotional, and death.

## COUNT IX:

### MEDICAL PROFESSIONAL NEGLIGENCE
### (BRADLEY PAGE, PA-C)

117.    Plaintiffs re-alleges and incorporates herein by reference all above-numbered paragraphs as if fully set forth herein.

118.    At all times relevant hereto, Defendant Page was a physician assistant licensed to practice medicine under the laws of the State of Georgia.

119.    Defendant Page was the physician assistant directly responsible for the medical care and treatment of Ethan Taylor during his incarceration in the Pierce County Jail.

120.    Page, at all times relevant hereto, was also acting within the scope of his employment with Faith Family Practice, LLC.

121.    Page owed Taylor a duty to exercise a reasonable degree of skill and care in the treatment of Taylor.

122.    Page failed to exercise toward Taylor that degree of skill and care which under similar

-20-

conditions and like surrounding circumstances is ordinarily employed by a physician

assistant, including but not limited to, one or more of the following ways:

- by withholding or failing to administer the proper medications to Taylor while he was incarcerated in the Pierce County Jail;

- by subjecting Taylor to an unsupervised and patently dangerous drug withdrawal;

- by failing to personally examine Taylor;

- by failing to properly evaluate Taylor's medical history and recognizing Taylor's need for medications to assist him in the withdrawal process;

- by failing to offer any type of meaningful assistance to Taylor, or to ease his visible pain and suffering, despite the clear, open, and obvious signs that he was experiencing dangerous withdrawal symptoms while in custody;

- by failing to appreciate the severity of Taylor's condition when contacted by Chanda Shubert, LPN;

- by failing to be available when contacted in an emergency situation; and/or

- by failing to assess the seriousness of Taylor's withdrawal symptoms.

123.    Pursuant to O.C.G.A. § 9-11-9.1, and attached hereto as Exhibit "B" and incorporated

fully herein by reference, is the Affidavit of Johnny Bates, M.D. Said Affidavit specifies

at least one (1) negligent act or omission on the part of Defendant Page and the factual

basis for such negligent act or omission that caused injury and death to Taylor.

124.    As a direct and proximate result of Defendant Page's failure to exercise that care

exercised by a reasonably prudent Physician Assistant under similar conditions and like circumstances, Ethan Taylor suffered severe discomfort; injury; pain; and aguish, both physical and emotional; and death.

125.   The aforesaid negligence of Defendant Page is imputed to Faith Family Practice, LLC, and said Defendant is thus jointly and severally liable with Defendant Page for all damages sustained by Ethan Taylor as a result of negligence of Defendant Page as set out above.

## COUNT X:

### MEDICAL PROFESSIONAL NEGLIGENCE
### (CHANDA SHUBERT, LPN)

126.   Plaintiffs re-alleges and incorporates herein by reference all above-numbered paragraphs as if fully set forth herein.

127.   At all times relevant hereto, Defendant Shubert was a licensed practical nurse authorized to practice in her profession under the laws of the State of Georgia.

128.   Shubert established a nurse-patient relationship with Taylor during his incarceration in the Pierce County Jail, and by undertaking the responsibility of caring for Taylor, Shubert had a duty to exercise a reasonable degree of skill and care in the treatment of Taylor.

129.   Shubert breached that duty and failed to adhere to the standard of care generally employed by licensed practical nurses under similar conditions or like circumstances, including but not limited to, one or more of the following ways:

    •    by withholding and/or failing to administer the proper medications to Taylor while he was incarcerated in the Pierce County Jail;

    •    by failing to properly monitor, observe, and assess Taylor's medical

-22-

condition and to obtain appropriate medical assistance for him;

- by failing to investigate, to make reports to appropriate medical personnel, and to offer any type of meaningful assistance to Taylor, or to ease his visible pain and suffering, despite the clear, open, and obvious signs that he was experiencing dangerous withdrawal symptoms while in custody;

- by failing to properly evaluate Taylor;

- by failing to appreciate the severity of Taylor's condition; and/or

- by failing to assess the seriousness of Taylor's withdrawal symptoms.

130. Pursuant to O.C.G.A. § 9-11-9.1, and attached hereto as Exhibit "B" and incorporated fully herein by reference, is the Affidavit Johnny Bates, M.D. Said Affidavit specifies at least one (1) negligent act or omission on the part of Defendant Shubert and the factual basis for each such negligent act or omission that caused injury and death to Ethan Taylor.

131. As a direct and proximate result of Shubert's failure to exercise that care exercised by a reasonably prudent Licensed Practical Nurse under similar conditions and like circumstances, Taylor suffered severe discomfort; injury; pain; and aguish, both physical and emotional; and death.

132. The aforesaid negligence of Shubert is imputed to Faith Family Practice, LLC, and said Defendant is thus jointly and severally liable with Shubert for all damages sustained by Taylor as a result of negligence of Shubert as set out above.

## COUNT XI:

## MEDICAL PROFESSIONAL NEGLIGENCE
### (CLAY LEE, M.D.)

133. Plaintiff re-alleges and incorporates herein by reference all above-numbered paragraphs as if fully set forth herein.

134. At all times relevant hereto, Defendant Lee was a physician licensed to practice medicine under the laws of the State of Georgia.

135. Lee was one of the physicians directly responsible for the medical care and treatment of Taylor during his incarceration in the Pierce County Jail.

136. Lee, at all times relevant hereto, was also acting within the scope of his employment with Faith Family Practice, LLC.

137. Lee owed Taylor a duty to exercise a reasonable degree of skill and care in the treatment of Taylor.

138. Defendant Lee failed to exercise toward Ethan Taylor that degree of skill and care which under similar conditions and like surrounding circumstances is ordinarily employed by a physician, including but not limited to, one or more of the following ways:

- by withholding or failing to administer the proper medications to Taylor while he was incarcerated in the Pierce County Jail;

- by subjecting Taylor to an unsupervised and patently dangerous drug withdrawal;

- by failing to personally examine Taylor;

- by failing to properly evaluate Taylor's medical history and recognizing Taylor's need for medications to assist him in the withdrawal process;

- by failing to offer any type of meaningful assistance to Taylor, or to ease his visible pain and suffering, despite the clear, open, and obvious signs that he was experiencing dangerous withdrawal symptoms while in custody;

- by failing to appreciate the severity of Taylor's condition when contacted by Chanda Shubert, LPN;

- by failing to be available when contacted in an emergency situation;

- failing to properly assess and treat Taylor's condition;

- failing to properly monitor Taylor after realizing his withdrawal from fentanyl;

- failing to properly monitor and supervise Defendants Page and Shubert; and/or

- by failing to assess the seriousness of Taylor's withdrawal symptoms.

139. Pursuant to O.C.G.A. § 9-11-9.1, and attached hereto as Exhibit "B" and incorporated fully herein by reference, is the Affidavit Johnny Bates, M.D. Said Affidavit specifies at least one (1) negligent act or omission on the part of Defendant Lee and the factual basis for each such negligent act or omission that caused injury and death to Ethan Taylor.

140. As a direct and proximate result of Defendant Lee's failure to exercise that care exercised by a reasonably prudent Physician under similar conditions and like circumstances, Taylor suffered severe discomfort; injury; pain; and aguish, both physical and emotional; and death.

141. The aforesaid negligence of Defendant Lee is imputed to Faith Family Practice, LLC, and

said Defendant is thus jointly and severally liable with Defendant Lee for all damages

sustained by Taylor as a result of negligence of Defendant Shubert as set out above.

## COUNT XII:

### MEDICAL PROFESSIONAL NEGLIGENCE
### (JERRY, MULLIS, M.D.)

142.    Plaintiff re-alleges and incorporates herein by reference all above-numbered paragraphs

as if fully set forth herein.

143.    At all times relevant hereto, Defendant Mullis was a physician licensed to practice

medicine under the laws of the State of Georgia.

144.    Mullis was one of the physicians directly responsible for the medical care and treatment

of Taylor during his incarceration in the Pierce County Jail.

145.    Mullis, at all times relevant hereto, was also acting within the scope of his employment

with Faith Family Practice, LLC.

146.    Mullis owed Taylor a duty to exercise a reasonable degree of skill and care in the

treatment of Taylor.

147.    Mullis failed to exercise toward Taylor that degree of skill and care which under similar

conditions and like surrounding circumstances is ordinarily employed by a physician,

including but not limited to, one or more of the following ways:

•    by withholding or failing to administer the proper medications to Taylor

while he was incarcerated in the Pierce County Jail;

•    by subjecting Taylor to an unsupervised and patently dangerous drug

withdrawal;

•    by failing to personally examine Taylor;

-26-

- by failing to properly evaluate Taylor's medical history and recognizing Taylor's need for medications to assist him in the withdrawal process;

- by failing to offer any type of meaningful assistance to Taylor, or to ease his visible pain and suffering, despite the clear, open, and obvious signs that he was experiencing dangerous withdrawal symptoms while in custody;

- by failing to appreciate the severity of Taylor's condition when contacted by Chanda Shubert, LPN;

- by failing to be available when contacted in an emergency situation;

- failing to properly assess and treat Taylor's condition;

- failing to properly monitor Taylor after realizing his withdrawal from fentanyl;

- failing to properly monitor and supervise Defendants Page and Shubert; and/or

- by failing to assess the seriousness of Taylor's withdrawal symptoms.

148. Pursuant to O.C.G.A. § 9-11-9.1, and attached hereto as Exhibit "B" and incorporated fully herein by reference, is the Affidavit Johnny Bates, M.D. Said Affidavit specifies at least one (1) negligent act or omission on the part of Defendant Mullis and the factual basis for each such negligent act or omission that caused injury and death to Ethan Taylor.

149. As a direct and proximate result of Defendant Mullis's failure to exercise that care exercised by a reasonably prudent Physician under similar conditions and like

circumstances, Taylor suffered severe discomfort; injury; pain; and aguish, both physical and emotional; and death.

150.    The aforesaid negligence of Mullis is imputed to Faith Family Practice, LLC, and said Defendant is thus jointly and severally liable with Defendant Mullis for all damages sustained by Ethan Taylor as a result of negligence of Defendant Mullis as set out above.

## COUNT XIII:

### RESPONDEAT SUPERIOR

**(PIERCE COUNTY, GEORGIA and JOHN RAMSEY BENNETT, in his Official Capacity as Sheriff of Pierce County, Georgia)**

151.    Plaintiff re-alleges and incorporates herein by reference all above-numbered paragraphs as if fully set forth herein.

152.    Upon information ad belief, Defendant Pierce County has waived its sovereign immunity through the purchase of liability insurance.

153.    Sovereign immunity as to Defendant Bennet, in his Official capacity as Sheriff of Pierce County, Georgia, has been waived through O.C.G.A. § 15-16-24, which renders the Sheriff liable for the acts and misconduct of his jailers, and through O.C.G.A. § 15-16-23, which requires each deputy appointed by the Sheriff to execute a bond with a surety, payable to the Sheriff and conditioned upon the faithful performance of the deputy's duties.

154.    Defendants Pierce County and Bennett, in his official capacity as Sheriff of Pierce County, Georgia, are responsible for the acts and omissions o their employees committed within the scope of their employment.

-28-

155.    The negligent acts and omissions of the employees of the Defendant Pierce County and/or
        Defendant Bennett, in his Official Capacity as Sheriff Pierce County, Georgia, include,
        but are not limited to:

      a.    failure to properly monitor, observe, and assess Taylor's medical condition
        and to obtain appropriate medical assistance for him;

      b.    withholding or failing to administer the proper medications to Taylor
        while he was incarcerated in the Pierce County Jail;

      c.    deliberately and improperly placing Taylor into confinement in the "safety
        room" under improper and inhumane conditions; and

      d.    failure to investigate, to make reports to appropriate medical personnel,
        and to offer any type of meaningful assistance to Taylor, or to ease his
        visible pain and suffering, despite the clear, open, and obvious signs that
        he was experiencing dangerous withdrawal and/or other medical
        symptoms while in custody.

156.    As a direct and proximate result of the aforesaid acts and omissions, Taylor suffered
        severe discomfort; injury; pain; anguish, both physical and emotional, and death.

157.    Defendants Pierce County and John Ramsey Bennett, in his Official Capacity as Sheriff
        of Pierce County, Georgia, are liable for the damages sustained by virtue of the aforesaid
        conduct of their agents and employees.

## COUNT XIV:

## RESPONDEAT SUPERIOR

## (FAITH FAMILY PRACTICE, LLC.)

158. Plaintiff re-alleges and incorporates by reference all above-numbered paragraphs as if fully set forth herein.

159. At all times relevant hereto, Defendants Shubert, Page, Lee, and Mullis were employees of Defendant Faith Family Practice, LLC., and were acting within the scope of their employment when treating Ethan Taylor.

160. As such, Defendant Faith Family Practice, LLC. is responsible for the acts and omissions of their employees while its employees are acting within the scope of their employment.

161. Faith Family Practice, LLC's employees, including but not limited to Defendants Shubert, Page, Lee, and Mullis, breached the standard of care as plead above while functioning within the scope fo their employment.

162. As a direct and proximate result of the aforesaid acts and omissions of Defendant Faith and Family Practice's employees, Taylor suffered severe discomfort; injury; pain; anguish, both physical and emotional, and death.

163. As such, Defendant Faith Family Practice is liable for damages sustained by virtue of the aforesaid conduct of their agents and employees.

## COUNT XV:

### CLAIM FOR ATTORNEY'S FEES PURSUANT TO 42 U.S.C. § 1988

### (ALL DEFENDANTS)

164. Plaintiffs re-alleges and incorporates by reference all above-numbered paragraphs as if fully set forth herein.

165. All individual, governmental, and official-capacity defendants were acting under color of state law at the time they caused injury and death to Plaintiffs' Decedent.

166.    As to all Defendants, Plaintiffs are entitled to a reasonable allowance for attorney's fees as part of their costs.

## COUNT XVI:

## CLAIM FOR ATTORNEY'S FEES UNDER GEORGIA STATE LAW

## (ALL DEFENDANTS)

167.    Plaintiffs re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

168.    Plaintiffs have incurred attorney's fees and costs of litigation, and will incur additional attorney's fees and costs of litigation as a result of the Defendants' actions. Defendants' behavior forced Plaintiffs to bring this lawsuit to obtain relief, and Plaintiffs should be compensated for the expenditure of their attorney's fees and costs necessary to protect their property rights.

169.    Defendants are statutorily liable for Plaintiffs' attorney's fees and expenses of litigation in this action.

170.    Defendants have also acted in bad faith, been stubbornly litigious, and caused Plaintiffs unnecessary trouble and expense. Accordingly, and in addition to any other statutory basis for recovery of the same, Plaintiffs are entitled to recover their attorney's fees and costs of litigation under O.C.G.A. § 13-6-11.

## **PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiffs pray:

(A)     That summons and process issue and be served upon Defendants;

(B)     For a trial by a jury comprised of twelve persons;

(C)     That Plaintiffs be awarded an amount in excess of $10,000,000.00 to compensate for the mental and physical pain and suffering sustained by Ethan Taylor prior to his death; as well as to compensate for funeral, medical, and other necessary expenses resulting from the injuries to and death of the said Decedent;

(D)     That Plaintiffs be awarded punitive damages from Defendants solely to punish, penalize, or deter the Defendants;

(E)     That Plaintiffs be awarded an amount to compensate them for the full value of the life of Ethan Taylor;

(F)     That Plaintiffs recover attorney's fees from all Defendants under applicable state law;

(G)     For such other and further relief as the Court deems just and proper.

**THIS 18th DAY OF JULY 2025.**

BY:    s/ *Brent J. Savage*
       Brent J. Savage
       Attorney for Plaintiffs
       Georgia Bar No. 627450

**SAVAGE, TURNER, PINCKNEY,
SAVAGE, & SPROUSE**
102 E. Liberty Street, 8th Floor (31401)
P.O. Box 10600
Savannah, Ga 31412
Phone: (912) 231 - 1140
Fax:    (912) 232 - 4212

BY:    s/ *A. Alexandra Brown*
       A. Alexandra Brown
       Attorney for Plaintiffs
       Georgia Bar No. 433019

**BROWN & THIGPEN, PC**
215A Albany Avenue
Waycross, GA 31501
Phone: (912) 548 - 0685
Brownandthigpenlaw@gmail.com